# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICKIE D. OLIVER,<br><br>                    Petitioner,<br><br>        v.<br><br>TIM WENGLER, Warden, Idaho<br>Correctional Center,<br><br>                    Respondent. | Case No. 1:12-cv-00096-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Rickie D. Oliver's Petition for Writ of Habeas Corpus (Dkt. 1). Respondent filed an Answer and Brief in Support of Dismissal (Dkt. 10). Petitioner did not file a reply. The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on August 15, 2013. (*See* Dkt. 9.)

Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying the Petition and dismissing this case.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Petitioner sold cocaine to an undercover police detective on three separate occasions. His defense at trial was entrapment; he claimed that the detective and a confidential informant ("CI") induced him to sell the cocaine. Petitioner was convicted by a jury of three counts of trafficking in cocaine, in violation of Idaho Code §§ 37-2732B(a)(2) and 18-204. (State's Lodging B-5.) He was sentenced to concurrent terms of 15 years imprisonment with 5 years fixed on Count 1, 17 years imprisonment with 5 years fixed on Count 2, and 25 years with 12 years fixed on Count 3. (State's Lodging A-1 at 82-83.)

Petitioner filed a direct appeal. The Idaho Court of Appeals affirmed in an unpublished decision. The court rejected Petitioner's claim that the state improperly exercised a peremptory challenge to excuse an African-American man from the jury panel. (State's Lodging B-5 at 4-6.) And although the court agreed with Petitioner that a detective's testimony that Petitioner did not seem to have any "mental disorders" when he sold the detective the drugs was admitted in violation of the Idaho Rules of Evidence, the court concluded that this error was harmless. (*Id*. at 6-8.) The Idaho Supreme Court denied Petitioner's petition for review. (State's Lodging B-8.)

Petitioner then filed a timely petition for state postconviction relief. He argued that his trial counsel was ineffective for failing to pursue a defense of sentencing entrapment.[1]

---

[1] Petitioner also argued in his state postconviction petition that his counsel should have argued that the statutes under which Petitioner was convicted are unconstitutional. (State's

**MEMORANDUM DECISION AND ORDER - 2**

(State's Lodging C-1 at 8-9.) The state district court summarily dismissed the petition. (*Id.* at 224-232.) The Idaho Court of Appeals affirmed, concluding that counsel's performance was not deficient because sentencing entrapment is not a recognized defense in Idaho and because the choice of defense was a strategic decision. (State's Lodging D-6 at 2-7.) Petitioner filed a petition for review and a petition for rehearing, both of which were denied by the Idaho Supreme Court. (States' Lodging D-10 & D-11.)

Petitioner filed his federal habeas Petition on February 29, 2012, and asserts three claims. In Claim A, Petitioner asserts that because sentencing entrapment was "the only legitimate affirmative defense available," his trial counsel should have presented that defense, rather than a traditional entrapment defense. (Pet. at 4.) Claim B is really two separate claims. In Claim B(1), Petitioner argues that the prosecutor improperly excluded from the jury the only African-American venire person. (*Id*.) Claim B(2) asserts that the undercover detective's testimony regarding Petitioner's mental state violated his rights under the Fifth, Sixth, and Fourteenth Amendments.[2] (*Id*.) Because the Fifth and Sixth Amendment do not provide grounds for relief from an evidentiary error such as the wrongful admission of expert testimony, the Court construes Claim B(2) as asserting that the detective's testimony violated Petitioner's Fourteenth Amendment due process right to a fair trial.

---

Lodging C-1 at 7, 226-227.) Petitioner does not assert that claim in his federal Petition.

[2] Respondent mistakenly asserts that Petitioner bases Claim B(2) on the Idaho Rules of Evidence. (Dkt. 10 at 19-20.)

**MEMORANDUM DECISION AND ORDER - 3**

## DISCUSSION

**1.      Standard of Law**

Federal habeas corpus relief may be granted on claims adjudicated on the merits in

a state court judgment when the federal court determines that the petitioner "is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). A federal habeas court reviews the state court's "last reasoned decision" in

determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797,

804 (1991).

Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), federal habeas relief is generally limited to instances where the

state court's adjudication of the petitioner's claim

> (1)      resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. Section 2254(d)(1) has two clauses, each with

independent meaning. That section consists of two alternative tests: the "contrary to" test

and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

**MEMORANDUM DECISION AND ORDER - 4**

federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694.

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

When a petitioner contests the reasonableness of the state court's factual determinations, a federal court must undertake a § 2254(d)(2) analysis. To be eligible for

**MEMORANDUM DECISION AND ORDER - 5**

relief under § 2254(d)(2), the petitioner must show that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The United States Supreme Court has admonished that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified four types of unreasonable factual determinations in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when state courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective"; or (4) when state courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004). If the state court's decision was based on an unreasonable determination of the facts, then the Court is not limited by § 2254(d)(1), but proceeds to a de novo review of the petitioner's claims, which may include consideration of evidence outside the state court record. *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010).

Although Petitioner states in his Petition that "a segment of the state courts [sic] decisions are predicated upon an unreasonable determination of the facts," he does not identify any specific factual finding that he contends is unreasonable. (Pet. at 5.) This is insufficient to show that the decisions of the Idaho Court of Appeals were based on an

**MEMORANDUM DECISION AND ORDER - 6**

unreasonable determination of the facts.

Petitioner also states that "[t]here has never been an evidentiary hearing on the principle issue charged here: Ineffective Assistance of Counsel; and, accordingly, [Petitioner] has never had the opportunity to develop the facts." (Pet. at 6.) However, only in limited circumstances may the state court record be supplemented in federal court, such as: (1) when a state court did not decide a claim on the merits, and the claim is properly before the federal court; (2) when the state court factual determination was unreasonable; (3) when a petitioner wishes to show cause and prejudice in a procedural default setting; or (4) when a petitioner is trying to show actual innocence to overcome a procedural default or statute of limitations issue.

Here, all of the claims in the Petition except B(2) have been adjudicated on the merits; thus, no further factual development is permitted. In *Cullen v. Pinholster*, the Supreme Court explained: "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) *on the record that was before that state court*." 131 S. Ct. 1388, 1400 (2011) (emphasis added); *see also Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("[W]e have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."). Claim B(2), which challenges the detective's trial testimony, should have been brought on direct appeal, where no additional factual development or an evidentiary hearing would have been permitted in state court. Therefore, no further factual development or an evidentiary hearing is necessary or required here.

**MEMORANDUM DECISION AND ORDER - 7**

The Court will now consider whether the Idaho Court of Appeals' rejection of Petitioner's claims was contrary to, or an unreasonable application of, clearly established Supreme Court precedent under § 2254(d)(1).

**2.    Specific Factual Basis for Petitioner's Claims**

On three occasions in late 2005, Petitioner sold cocaine to a person who turned out to be an undercover police detective. As a result, Petitioner was charged with three counts of cocaine trafficking. During jury selection, the prosecutor exercised a peremptory strike to excuse a prospective juror who was, as stated by the trial judge, "obviously of African American descent." (State's Lodging A-5 at 101.) The defense argued that there was no reason for the prosecutor to strike the potential juror other than his race. (*Id*.) The prosecutor, on the other hand, stated that the man "was singled out from the State's perspective before we even appeared in court today, and that's based on his criminal record. He has a PV [probation violation]. He had a no-contact order arrest that ended up getting dismissed. He had a battery and a failure to appear," as well as a conviction for disturbing the peace and an arrest for driving on a suspended license. (*Id*. at 101-02.) The trial judge determined that the prosecutor's explanation was credible and that she did not strike the prospective juror on an impermissible basis. (*Id.* at 104-06.) The jury was selected and the trial began.

Perhaps because there was no doubt that Petitioner sold the drugs to the detective, Petitioner's counsel presented an entrapment defense. Petitioner testified that he was actually selling the cocaine on behalf of a friend and that he himself made no money from

**MEMORANDUM DECISION AND ORDER - 8**

the transactions. (State's Lodging A-7 at 31.) This friend was, unbeknownst to Petitioner, working with the undercover detective as a CI.

According to Petitioner, he sold the cocaine only because the CI kept hounding him to do it; Petitioner eventually gave in because the CI "was wearing [him] out." (*Id*. at 16.) The CI supposedly could not sell the drugs himself because he "had just got arrested for selling cocaine, and his connection wouldn't . . . talk to him." (*Id*.) Petitioner testified that during the time when he was selling cocaine on behalf of the CI, he was taking prescription medication, which affected his judgment, and that the CI and the detective took advantage of him. (*Id*. at 14, 18.) Petitioner claimed he "wasn't thinking clearly and [was] trying to do a favor for a friend." (*Id*. at 29.) If it had not been for the CI, Petitioner maintained, he would never have sold the drugs. (*Id*. at 15.)

On rebuttal, the state elicited testimony from the undercover detective regarding Petitioner's apparent mental state at the time of the drug transactions. The prosecutor asked the detective whether he noticed if Petitioner had any sort of "personality disorder." (*Id*. at 42.) Defense counsel objected. The trial court ruled that the detective could "not give a medical opinion, but he may give his opinion as a trained officer as to whether he observed anything. The weight to be given to the evidence is for the jury." (*Id*.) The detective then stated, "It is my opinion in the five years of negotiations and crisis interventions and my experience as a 15-year veteran in law enforcement that [Petitioner] . . . had no mental disorders at all." (*Id*. at 43.) The trial judge later gave the jury a limiting instruction:

**MEMORANDUM DECISION AND ORDER - 9**

> You were allowed to hear testimony from [the detective] that he observed no mental disorders as to the defendant in his dealings with the defendant. You were advised that this testimony does not represent a medical opinion but only [the detective's] opinion as a law-enforcement officer. It was admitted for the sole purpose of explaining the detective's state of mind and impressions of the defendant while involved in these transactions.

(State's Lodging A-7 at 65.)

The jury rejected Petitioner's entrapment defense and found him guilty on all counts.

## 3.     Analysis of Claim A: Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment by asserting a traditional entrapment defense, rather than a sentencing entrapment defense. An entrapment defense is a claim that "an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a State agent who, desiring grounds for prosecution, originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense." *State v. Koller*, 835 P.2d 644, 646 (Idaho 1992) (emphasis omitted) (quoting *State v. Hansen*, 673 P.2d 416, 417 n.1 (Idaho 1983). Sentencing entrapment "occurs 'when a defendant is predisposed to commit a lesser crime, but is entrapped by the government into committing a crime subject to more severe punishment.'" *United States v. Biao Huang*, 687 F.3d 1197, 1202 (9th Cir. 2012) (quoting *United States v. Mejia*, 559 F.3d 1113, 1118 (9th Cir. 2009). The defense of sentencing entrapment, which has not been recognized in all

**MEMORANDUM DECISION AND ORDER - 10**

jurisdictions, "serves to prevent the government from structuring sting operations in such a way as to maximize the sentences imposed on defendants without regard for the defendant's culpability or ability to commit the crime on his own." *Id.* at 1203 (internal quotation marks and alteration omitted).

The standard for ineffective assistance of counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness.  *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

**MEMORANDUM DECISION AND ORDER - 11**

> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to
> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable
> professional judgments support the limitations on
> investigation. In other words, counsel has a duty to make
> reasonable investigations or to make a reasonable decision
> that makes particular investigations unnecessary. In any
> ineffectiveness case, a particular decision not to investigate
> must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to
> counsel's judgments.

*Id.* at 690-91.

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

**MEMORANDUM DECISION AND ORDER - 12**

errors, the result of the proceeding would have been different." *Id.* at 694. As the

*Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96.

The Idaho Court of Appeals determined the Petitioner's counsel did not render

ineffective assistance by failing to assert a defense of sentencing entrapment. It based this

decision in part on the fact that "neither sentencing entrapment nor sentence factor

manipulation has ever been recognized in Idaho." (State's Lodging D-6 at 5-6.) Thus,

counsel did not perform deficiently in failing to assert such a defense. Further, the court

held that even if sentencing entrapment were recognized as a defense in Idaho, Petitioner

"would have no legitimate claim that his attorney was deficient for rejecting it in favor of

the full entrapment defense that was employed." (*Id.* at 6.) The court went on:

> Strategic decisions of counsel will not be second-guessed unless the decision is shown to have resulted from

**MEMORANDUM DECISION AND ORDER - 13**

inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective review. . . . [T]he choice between asserting a traditional entrapment defense that could potentially result in a full acquittal, or a sentencing entrapment defense that could bring only conviction of a lesser offense, is a strategic one. [Petitioner] asserts that the "facts of this case simply would never have supported an affirmative defense of entrapment" because the trial evidence demonstrated that he was an addicted drug user with a propensity to sell small quantities of drugs. He cites evidence that he had been *buying* cocaine for "a lengthy period of time prior to police involvement" in one-half to one-ounce quantities, and that the undercover officer and confidential informant called him approximately 785 times over a period of three months to ask him to sell cocaine. These facts, even if true, do not demonstrate that a decision to rely upon an entrapment defense instead of a sentencing entrapment defense was unreasonable. [Petitioner] testified at trial that he had never done anything like this before and had not wanted to be involved in the transactions, but that he was pressured into *selling* drugs to the undercover officer while he was ill and susceptible to persuasion. Because there were facts that a reasonable attorney could present at trial to support either a traditional entrapment or a sentencing entrapment defense, the choice between these mutually exclusive defenses would be a matter of strategy. [Petitioner] presented only conclusory arguments that the decision not to pursue a sentencing entrapment defense was due to inadequate preparation or ignorance of the law, and was not a sound strategic decision. Even if the sentencing entrapment defense was recognized in Idaho, the district court would not have been required to accept [Petitioner's] conclusory arguments unsupported by admissible evidence.

(*Id*. at 6-7) (second emphasis added).

The decision of the state court of appeals was reasonable. The Court has found no

Supreme Court decision intimating that trial counsel can commit deficient performance

under *Strickland* by failing to assert a defense that has not been recognized as valid in the

**MEMORANDUM DECISION AND ORDER - 14**

state of conviction. And as found by the Idaho Court of Appeals, the choice of the

entrapment defense was a strategic one, and there is nothing in the record to suggest that

Petitioner's counsel chose the entrapment defense based on inadequate research or

investigation. Indeed, research into potential defense theories would have shown that the

phrase "sentencing entrapment" occurs in only one reported Idaho case: *State v. Henry*,

63 P.3d 490, 492 n.3 (Idaho Ct. App. 2003), in which the Idaho Court of Appeals

declined to address sentencing entrapment without expressing an opinion on the validity

of the defense. (*See* State's Lodging D-6 at 6 n.5.)

Further, even if counsel had not investigated sentencing entrapment as a potential

defense, the decision not to investigate would not constitute deficient performance

because, as the Idaho Court of Appeals explained, traditional entrapment and sentencing

entrapment are mutually exclusive. A defendant cannot credibly say, at the same time,

both "I would not have sold the cocaine if not for the police" and "I would have sold only

some of the cocaine if not for the police." Traditional entrapment, if accepted by the jury,

results in a full acquittal. Sentencing entrapment, on the other hand, guarantees that the

defendant will be convicted of *something*. The state court reasonably determined that the

decision not to investigate a sentencing entrapment defense did not constitute deficient

performance because such a defense would have been inconsistent with the reasonably

chosen defense theory of traditional entrapment. *See Correll v. Stewart*, 137 F.3d 1404,

1411 (9th Cir. 1998) (holding that counsel's failure to develop a mens rea defense was

reasonable because such a defense "would have conflicted with the primary defense

**MEMORANDUM DECISION AND ORDER - 15**

theory of misidentification"); *Turk v. White*, 116 F.3d 1264, 1267 (9th Cir. 1997) (holding that counsel's selection of self-defense theory was reasonable and obviated his need to investigate defendant's claim of incompetency).

Because the state court's decision—that Petitioner's attorney performed well within professional standards—was a reasonable application of *Strickland*, Petitioner is not entitled to relief on Claim A.

### 3.   **Analysis of Claim B(1): *Batson* Challenge**

Petitioner claims that the prosecutor improperly excused a potential juror based on his race. In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the United States Supreme Court held that "[a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." (internal quotations omitted). Courts analyzing a *Batson* challenge apply a three-part test. *Miller-El v. Cockrell*, 537 U.S. 322, 328 (2003). First, "the defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race." *Id.* "Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question." *Id.* "Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination." *Id.* at 328-29.

The trial court properly analyzed Petitioner's *Batson* claim according to this three-

**MEMORANDUM DECISION AND ORDER - 16**

part test and concluded that Petitioner had made out a prima facie case for discrimination because the prosecutor exercised a peremptory challenge to strike the "only obviously African American member of the jury panel." (State's Lodging A-5 at 105.) The court then considered the prosecutor's explanation that the prospective juror's "prior arrest record and failure to appear in a proceeding in which he was involved" was the basis for the strike. (*Id*. at 106.) The trial judge accepted this race-neutral explanation and determined that Petitioner had not shown that the prosecutor's stated reason was pretextual. (*Id*.)

The Idaho Court of Appeals affirmed the trial court's *Batson* decision, stating that a "potential juror's criminal record has consistently been held to be a race-neutral justification for the use of a peremptory challenge in other jurisdictions." (State's Lodging B-5 at 5.) The court relied on the trial court's "perception of the validity of the prosecutor's explanation for exercising peremptory challenges on minority jurors," stating that the trial judge was "in a better position than we are to determine the motivation of the State in challenging" the potential juror. (*Id*. at 5-6.) The court held that the judge's decision to credit the prosecutor's explanation was not clearly erroneous. (*Id*. at 6.)

The decision of the Idaho Court of Appeals was consistent with a reasonable application of *Batson*. A potential juror's criminal record generally constitutes a race-neutral explanation for a peremptory strike. *See Carrera v. Ayers*, 699 F.3d 1104, 1108 (9th Cir. 2012) (holding that striking a juror whose son had a criminal record was an "obvious[ly] non-discriminatory reason[]" for the strike). The court appropriately gave

**MEMORANDUM DECISION AND ORDER - 17**

deference to the trial court's findings because the question of whether a prosecutor intentionally discriminated against a minority juror "largely . . . turn[s] on evaluation of credibility." *Batson*, 476 U.S. at 98 n.21. Because nothing in the record suggests the prosecutor was insincere in her reason for exercising the peremptory challenge, the state court reasonably rejected Petitioner's *Batson* claim.

## 4.     Analysis of Claim B(2): Evidentiary Claim

On direct appeal, Petitioner argued that the trial court improperly allowed the detective to testify regarding Petitioner's apparent mental state. (State's Lodging B-2 at 9-13.) Citing an Idaho case discussing the standards for expert testimony under Idaho Rule of Evidence 702, Petitioner argued that the detective gave a medical opinion when he testified that Petitioner had no mental disorders. (*Id*. at 11.) Although the trial court had ruled that the detective could not give a medical opinion, Petitioner asserted that "an opinion about mental disorders really cannot be given without also giving a medical opinion." (*Id*.)

The Idaho Court of Appeals agreed that the detective improperly gave a medical opinion, but held that the testimony was harmless. (State's Lodging B-5 at 7-8.) Petitioner now argues that the determination of harmlessness violated his federal constitutional rights.

However, Petitioner never presented his evidentiary claim to the Idaho state courts as a federal constitutional claim. He argued only that the Idaho Rules of Evidence prohibited the detective's rebuttal testimony. A habeas petitioner must exhaust his

**MEMORANDUM DECISION AND ORDER - 18**

remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845.

The law is clear that a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001). Because Petitioner did not do so, his federal constitutional claim predicated on the detective's testimony is not properly exhausted. Idaho does not allow a postconviction petitioner to assert claims that should have been raised on direct appeal (such as the issue of the detective's testimony), Idaho Code § 19-4901(b), nor does it allow a successive postconviction petition to raise claims that should have been raised in the original petition, Idaho Code § 19-4908. Therefore, Petitioner's constitutional claim based on the detective's rebuttal testimony is procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) (stating that a claim is procedurally defaulted if it was not raised in state court and "if it is clear that the . . . claim[] [is] now procedurally barred under state law") (internal quotation marks and alteration omitted).

Because Petitioner's due process claim is procedurally defaulted, the Court cannot hear the merits of the claim unless Petitioner meets one of two exceptions: (1) a showing

**MEMORANDUM DECISION AND ORDER - 19**

of adequate legal cause for the default and prejudice arising from the default; or (2) a showing that a miscarriage of justice will occur if the claim is not heard in federal court, which means that the alleged constitutional violation has probably resulted in the conviction of someone who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner bears "the burden of showing, not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

The Court shall give Petitioner 21 days from the date of this Order to submit a supplemental brief arguing that he meets the cause and prejudice standard to excuse the procedural default of Claim B(2).[3]

---

[3] Because the procedurally defaulted due process claim is not an ineffective assistance of trial counsel claim, Petitioner may not rely on *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012) (holding that inadequate assistance of counsel at "initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").

**MEMORANDUM DECISION AND ORDER - 20**

**5.     Conclusion**

For the foregoing reasons, the Court shall deny Claims A and B(1) of the Petition. The Court will address Claim B(2) once the parties have submitted their respective briefs regarding cause and prejudice.

## ORDER

**IT IS ORDERED:**

1.     Claims A and B(1) of the Petition for Writ of Habeas Corpus are denied.

2.     Within 21 days after entry of this Order, Petitioner may file a supplemental brief arguing that the procedural default of Claim B(2) is excused. Respondent may file a response brief no later than 21 days after service of Petitioner's principal brief, and Petitioner may file an optional reply brief no later than 14 days after service of the response brief. Petitioner's principal brief and Respondent's response brief regarding cause and prejudice shall be no longer than 10 pages, and Petitioner's optional reply brief shall be no longer than 5 pages.

DATED:  **October 21, 2013**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 21**